Morning, your honors. Stanton on behalf of Miguel Rosas. This case is about failure to appear, being punished for failure to appear, being punished for failure to appear, being punished for failure to appear, being punished for failure to appear, and being punished for failure to appear. And I'm not perseverating here. What I am telling you is that my client was punished five times for failure to appear. And I think the guidelines don't encompass that type of sentence. I don't think it's reasonable. I don't think that when you sentence somebody for committing an offense while on release, and the sole reason is because he failed to appear, and he gets a three-point increase, gets a two-point increase because he obstructed justice, for the sole reason is because he failed to appear, he loses three points for acceptance of responsibility. Mr. Bloom, just one second. Allison, would you start the clock, please? Sorry. We'll give you the extra. Thank you. Well, we have this break, counsel. Let's talk about exactly how the district court did this. He started with the basic drug sentence crime. Then he added to it for the failure to appear. Is that right? Correct. So what do we have there in terms of level? Well, he starts with a, I think he started with a 24. And then he took two points off. They took two points off because of the safety valve. They added two points on because of the obstruction of justice. They added three points on, that was for failure to appear, three points on because of the committing an offense while on release. He got the basic level and then he added on for obstruction of justice. Is that right? Yes. Okay. So he ended up with a level 27. And then what he did at the end, and I'll get to the second about the role of the offense, but what he did was he didn't consider, he considered the role of the offense that he also failed to appear, but then when he got to the issue of the role of the offense, he said, he did not give him any credit for that on that particular issue. So he said that he wasn't... That's correct. But then if you read the guidelines as it relates to the failure to appear on the denial of acceptance of responsibility, the comment's pretty straight. It says we're to add. Yes. And then when you get to the adequate notice and whether there was notice for him, which is one of your arguments, there's no question that we have case law right on point that says signing a PSR gives someone notice. Well, I think that what the government stipulated on the notice issue, Your Honor, was that they didn't think that my client had been advised that his guidelines could be enhanced as a result of his failure to appear. They stipulated to that and the documents that he did sign were actually indicating regarding 3146. And I don't think you can take those two statutes and put it together. Okay. Well, I guess my big worry is that when I read those parts of the, if you will, the guidelines, it seems to me that when we're trying to put a guideline sentence together to the guidelines are interpreted to be, well, we don't throw everything in at the first. And like my colleague was suggesting, it doesn't all get into the base offense. There's a base offense. And then other things that come up or come down, go up or down in the guidelines based on what happens in those particular matters. And in this particular matter, what he did falls into each one of these guideline provisions. It does, Judge. But here's the interesting problem. When you charge somebody with 3146, which is failure to appear, that's, you charge him with that and you indict him for that and then you give him a consecutive sentence. It doesn't make any sense to put it alongside of 3147. 3147 really deals with posing a threat to the community. It doesn't really encompass the failure to appear charge under 3146. Failure to appear isn't a threat to the community whatsoever. If you look at the Senate, they talk about 3147 is to deter those who pose a risk to the community for committing another offense when unreleased. It's to punish those who are convicted of another offense. Rule 30, Section 3146 is an opposite to that. The community is not at risk simply because someone doesn't fail to appear. But is there any exception for 3146 and 3147? Well, I don't think you can. Yes, I think it is. I mean, it isn't written there, is it? Well, it only makes sense, Judge, that if you wouldn't charge somebody for a bail offense, they're talking about a new offense there. That's the reason why the statute is there, if they commit a new offense. But if the new offense is actually 3146, the bail offense, for failure to show up in court or whatever it may be, you can't run those two together. And that's why I cited Simpson. You're basically punishing him five times for the same conduct, the same harm. And that's Simpson, and that's Busick. Those are Supreme Court cases that deal with the multiple punishment issue, the double jeopardy clause, the Fifth Amendment. And, I mean, if you just look at it reasonably, Judge, the only conduct that they're punishing him for here is for failure to appear, and they're punishing him five times. Now, if you want to say the Guidelines anticipates that that's okay because the judge in the district court said it was okay, I don't think it's okay. I have not seen a case where — I have not seen one case, and I've looked at it thoroughly, that talks about where he gets punished five times for the same conduct. It just — I'm just having a hard time getting around that. It doesn't make any sense to me. So that's why I've argued this here. If he did something else — Judge Fletcher has a question. Kagan. Counsel, how many months' difference are the two Guidelines levels? I'm not sure. How much does he get under the current one? What's the range? I think he got the bottom of it. And what's the other range that you're — Well, he got — he had, I think, from 63 to 78 months, and the judge — the judge, he went down a level based on 3553. He used it as a disparity issue between the defendants because it's clearly he thought my client was the least culpable, which brings me into the role of the offense situation. My client is — You didn't quite answer my question. Oh, I'm sorry. What would be the sentence that you think is appropriate? Well, I think the sentence in this case would be that he should get, if you compute it, a level 24. And you've got to understand, the last time he went in court, he had a level 26, but it's 80 to 100 pounds, so it's level 24. I think he should get three points for the acceptance of responsibility. I think he should get two for his role in the offense and two for the safety valve. And if you don't count the role in the offense, he would be at — he would be at, I think, 30 to 37. And so I think — then you add 10 months on there because of 3146, which has to be a consecutive sentence. And in answer to — I don't know if I've answered your question, Your Honor, but I'm going to get back to you, Judge Smith.  On the sentencing here, if you look at it the way you're saying it, then — I mean, I'm not saying you're saying that, but you get two consecutive sentences then. You get one for 31 — because you have to give a consecutive sentence under 3147 for failure to appear because he didn't show up. And then you've got to give him another consecutive sentence for failure to appear under 3146. I don't think these two statutes go together. I don't think they match, particularly in a case where you're talking about five times the punishment for the same conduct, the same harm, under multiple punishments in the Fifth Amendment. Now, as to the role in the offense, I've delineated that, but my client — the government argued a whole bunch of things about that he flashed the money that he negotiated. And so I filed a petition — I filed an objection to that and indicated some disclosure. And it was clear that he didn't do any of these things. He was just a driver that drove — that picked the load up and brought it back to the scene. He was not a — What's our standard review on the mitigating role reduction? Clear error. Clear error. Yeah. And in this particular matter, the judge said, these actions during the entire involvement of this case, specifically not only his past and future involvement in drugs, but specifically his being responsible for the drug load, his knowledge of where the drug was being kept, his fleeing after the bust went awry, and all indicate someone who had something other than a minor or minimum role. So we have to look at that, and we have to say, is that clear error? Clear. Well, I think it's clear, Judge. When you look at the — Well, I guess I'm trying to figure out, given what he said and how he goes through, the judge is right there. He's doing the job. He's got this responsibility for sentencing to do. And now this is not just, well, he's out — he may have made a mistake. This is he is absolutely wrong. Yeah. Well, I delineated all these things in my brief. But here's the point, Judge. When he considered that, the one error he did make, really clear error, was that he said he wasn't going to consider the — whether who was least culpable or who was comparatively less substantially culpable than any other defendants. He said he didn't think that was relevant. And that is relevant under 3B1.2. And he said, I'll consider that under 3553. So he never even considered that. He didn't follow the right standard when he considered that. So you've mentioned all these things, but he didn't consider the overall picture, which is the scope and structure, the overarching conspiracy that was alleged here with all the other individuals. And you look at my client and compare it, and he never used that analysis at all when he considered 3B1.2. He just used that under 3553 to show a disparity. Thank you, counsel. Thank you. Yeah. We'll hear from the government. Good morning, Your Honor. Chris Cavanius on behalf of the District of Arizona. Can you all hear me okay? We can. Can you hear us? Yes. I would like to just thank the court again for allowing me to appear telephonically. I appreciate that. The government would respectfully ask this court to affirm the sentence in this case because the district court properly calculated the guidelines. Perhaps addressing the minor role argument first, because it was the last thing that defense counsel touched on, he talked about how the district court did not use the correct standard. That is incorrect. The court actually did compare the defendant with his co-defendant, and we provide the citation in our answering brief at page 31, and basically just said, look, I think you can have, and this is a quote from the court at the recorder's transcript, page 8, I think you can have three people with varying degrees of culpability but who all play major roles. In other words, there's no clear error here, and that is the appropriate standard. When the district court makes the determination, this particular defendant having driven the load of drugs, having been entrusted with that load of drugs, and his entire involvement, as the court said, I just don't think there are grounds upon which this court would reverse under clear error review, number one, because the court was correct, and number two, because the standard of review would preclude reversal on this record. And as far as those DEA reports, it was the defendant who submitted those in the district court, so the government merely submitted them to this court. This court would have the benefit of them, and you can obviously take a look at them, but even if you weren't, you just rely on the PSR and what the district court found that would be sufficient. Moving to the guideline. Before you leave the mitigating role, one question I had, in addition to the concerns raised, is the fact that the district courts seem to consider other conduct in assessing whether or not to grant the mitigating role reduction. In the transcript, he talks about past and future involvement with drugs, which should not play a part in the assessment of that particular reduction. How do you respond to that? Well, you know, first of all, the court said it didn't consider the defendant's pending state charge. That's at Recorder's Transcript 49. So he didn't consider that. To the extent that he may have mentioned prior drug conduct, it would seem to just illustrate that this particular defendant was not the unwitting person. You know, defense counsel argued at Recorder's Transcript page 6 that the defendant, quote, was simply there, end quote. So I think what the district court was doing was taking all of the evidence that it was available to him. How does future involvement in drugs? I'm sorry? I mean, what the district court said, considering his past and future involvement in drugs. I just don't understand how that fits into a mitigating role analysis. Well, I would submit to you that the district court's record is the one that it made that was quoted by Judge Smith about the defendant's actions when compared to others show that he played a minor or minimal role because defense counsel clarified later, hey, Judge, you're not considering his pending state charge, i.e., what he committed when he was on release, and the court said, no, I'm not. So I think that that was later clarified, that the court really didn't consider that conduct in denying the minor role. All right. So I would submit to you that the record, when read as a whole, demonstrates that the district court appropriately declined to apply the minor role because the defendant had not demonstrated, and it was his burden to show that he was substantially less culpable than his co-conspirators. I guess you're conceding that if the district court did, in fact, consider future conduct, that that would be improper. No, I'm not conceding that, Your Honor. I am saying that. Well, wouldn't it be improper? I mean, the question is, I think you've aptly put the analysis, which is we have to take the record as a whole, but in this particular examination of the mitigating role offense, you can't consider future conduct. You mean the prior state offense? No, I mean, I'm just looking at his statement, his past and future involvement in drugs, and maybe he's talking about the pending. I don't know what he's talking about there, but that seemed to be an odd statement. Well, like I say, I guess I would not, you know, if the court is troubled by that, I guess I just would encourage you not to look at that in a vacuum and consider everything the court said. And if everything the court said justifies the denial of the adjustment, then that's what should apply here. Okay, why don't you move on to your other arguments. As far as the guideline calculation, the defendant appears to, again, raise this double jeopardy argument, and he cites Simpson. You know, Simpson talked about two different crimes. 3147 is a sentence enhancement statute. As Judge Smith noted, 3147 is clear, and this court in Patterson, Galliano, and Kemp noted that 3147 was clear. And this court is bound by that, so it cannot then sort of wander into the territory that the defendant would encourage this court to wander into, which is, number one, rewriting the statute to read like the defendant wants it to read. This court cannot add language. It does not say a defendant who commits an offense, it says. It doesn't say an offense except for 3146, failure to appear. It says an offense. And if you commit an offense while on release, then 3147 applies to you, and then the probation department properly applied the three-level enhancement. The guidelines were correctly calculated, and the defendant, again, is asking this court not only to take a position that would be contrary, I think, to Patterson, Galliano, and Kemp, but also we have four circuits now who have specifically said, Dyson, Fitzgerald, well, the circuits are 5th, 4th, 11th, and 6th, who have found that the application of 3147 is appropriate, even when the underlying offense is failure to appear under 3146. So, again, this court is somewhat cabined in terms of its discretion, and I would encourage this court to decline the defendant's invitation to do something that is contrary to the plain language of the statute, contrary to what this court has ruled about that statute, and contrary to four other circuits. As we add up all of the adjustments and calculations that the district court made, it appears to me, and you can correct me if I'm wrong, that it amounted to about a doubling of his sentence when you add in all the consequences of the failure to appear. Is that your calculation as well? You know, I don't know that I've captured it in terms of that. I think I'm just looking at it in terms of did the guideline, were the guidelines followed, and if you look at the guideline 2J1.6, it required grouping. The defendant doesn't seem to dispute that the crimes were properly grouped. No, I understand taking them bit by bit, but I think perhaps Judge Fletcher was asking the same question. What is the practical effect of all the adjustments made purely on the basis of his failure to appear? And it appears to me it's about a doubling of the sentence, but you don't know. I don't know if that's necessarily true, Your Honor, because if we were to pretend the guidelines didn't exist in terms of grouping and we were to separate these out somehow, again, I would really encourage this Court not to ignore the guidelines. But if what you're trying to do is establish what would he have gotten with his drug offense separately and then what would he have gotten with his failure to appear separately, somewhere those enhancements have to apply. I'm just asking a question. I understand your arguments as to why they apply individually, but if you do the separate calculations, it looks to me like it's a doubling of the sentence. You don't know, though. Well, I don't, but, you know, let's pretend. I mean, if you look back, it seems like one of the things that the District Court was careful to consider was what his guideline range was for the drug offense alone back in 2003. And the Court actually departed downward one level based not only on its desire to avoid unwarranted sentencing disparity with the other co-defendants, but also because it remembered that he faced a lower guideline range before he absconded. So he departed down one level, but back then it looked like his guideline range was 37 to 46 months for the drug crime all by itself, according to the 2003 PSR. Now, if you were to calculate somehow the failure to appear as a separate offense, as if it wasn't grouped, and, again, I don't think you can do that, but if we were to pretend, you know, a failure to appear ordinarily starts with a base offense level of 6, I think it would be under 3C1.0, I'm sorry, under 2J1.6, ordinarily you would start out with a base offense level of 6. You get an addition of 9 levels because his underlying offense, I'm looking at 2J1.6B2, his underlying offense is punishable by imprisonment for 15 years or more, so he gets 9. So you're looking at a level 15. And then as far as, you know, acceptance, even if we presumed an acceptance of two levels down, you know, he'd be looking maybe at a 12 to 18-month guideline range. And, again, this is all just stripped down, and I don't think we can do that. But let's say 12 to 18. So if he got 18 consecutive to a 46-month sentence, he'd be looking at 64 months. He got a combination of 63 months in this case. So, no, I think that even if you were to strip these down, give the defendant, you know, benefit of, you know, let's pretend his guideline range back in 2003 for the drug, plus the failure to appear guideline range on its own bald, I don't think we can do that. But either way, I mean, I think that he also received a tremendous benefit by being sentenced federally first. And the defendant even acknowledged that too. So, I mean, overall this sentence is more than reasonable. And the district court, again, under 3553A really took his time, you know, an hour and a half hearing, listening to everybody talk, and he recognized that the guideline range was not binding to him. And for that reason, this court should not remand, even if it was to find some kind of guideline error here, because the district court picked a sentence that it believed was reasonable under 3553A. And under Cantrell and Booker, even, you can still have harm of error in the guideline. Counsel, my questions are taking over time. I want to make sure all my colleagues have asked their questions. Do you have any further questions? No more. Okay. Thank you for your arguments, and we could hear you very clearly, so it came through very well. Thank you. Thank you, Governor. Do you want a minute for rebuttal? I'll just take a minute. Page 95 of the transcript, Judge. The district court says, one question is comparative culpability, which we will deal with at the time of arguing mitigation, and you can raise it again. It's referring to 3553. But the question, but that doesn't appear to me to be relevant to the question before us now as to whether your client played a minor or minimum role in the offense. So he wasn't even considering whether he's the least culpable or he's substantially less culpable in terms of the standard. Now, and I may add that the reason the guidelines in 2003 are a little bit, were a little bit different because the lawyer at that time, and I was not the attorney, but he didn't even bring it down a couple of levels because you can see in this case that it was 80 to 100 pounds as opposed to at that time it was 100 pounds. So it took it up two more levels. It should have been down two more levels, and that's why when this sentence occurred, that happened here. But they were still going off of the, that's why she said 34 months. Now, so it seems to me, Judge, that the reasonableness of this whole argument that I can stand before you is it doesn't make sense. The only issue that Judge Smith brought up about 3147, but we're not talking just about 3147. We're talking about a bunch of other things, how it affected the role in the offense. He said that he wasn't going to consider, if we just considered the 2000 case here and we didn't consider anything else. So he was considering some other evidence in the role in the offense as well. So that's why I've alleged multiple punishments there, obstruction of justice, acceptance of responsibility, the indictment, five times. I don't think, I haven't found one case that envisions that that type of sentence would be reasonable under the guidelines. And so that's why I'm asking you to at least remand it back so we can have a resentencing on those particular issues. Thank you. Thank you, counsel. The case just argued be submitted for decision.
judges: Fletcher B. , Thomas, Smith N. R.